UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

Case No. 4:23-cv-11560
Hon. F. Kay Behm

       Plaintiff,

v.

WILLIAM BEAUMONT HOSPITAL
d/b/a BEAUMONT HEALTH SYSTEM,

       Defendant.

---

## <u>DEFENDANT'S MOTION FOR RECONSIDERATION</u>

Defendant, William Beaumont Hospital ("Defendant" or "Beaumont"), through its attorneys Clark Hill PLC, states as follows in support of its Motion for Reconsideration pursuant to Local Rule 7.1:

1.    On October 1, 2024, Beaumont and the Equal Employment Opportunity Commission ("EEOC") filed competing Motions for Summary Judgment.

2.    On July 2, 2025, this Court issued an Opinion and Order On Motions for Summary Judgment granting in part and denying in part the parties' motions for summary judgment. In its Opinion, the Court adopted a legal test for determining whether summary judgment is appropriate in an alleged failure to transfer case

under the ADA, and a legal test for what is required as part of the interactive process in these types of cases. Although the Court borrowed from the parties' respective arguments, it ultimately adopted tests that differ from the tests espoused by the parties. These tests omit critical elements and fail to account for an employee's duty to provide requested medical documentation supporting the request to transfer and how the interactive process is delayed until the employee provides the requested documentation.

3.     Applying these faulty tests to the five positions at issue, this Court concluded there were genuine issues of material of fact relating to the Care Coordinator position (30111350), the Quality Improvement RN position (30102853), and the other Care Coordinator position (30115849) and thereby denied Beaumont's Motion for Summary Judgment with regard to these positions.

4.     This was a mistake by the Court because all of these positions had been filled *prior to* the time Megan Shefke ("Shefke") provided Beaumont with medical documentation supporting her request to be transferred as an accommodation. The Court erred by failing to grant Beaumont's Motion for Summary Judgment with regard to the three positions at issue.

5.     Alternatively, if the Court disagrees with Beaumont's argument that it is entitled to summary judgment, the Court made a mistake by granting summary judgment in favor of the EEOC with regard to whether Shefke adequately engaged

2

in the interactive process in connection with the Care Coordinator position (30111350).  By virtue of this ruling, the Court will effectively prevent Beaumont from arguing at trial that it was not required to transfer Shefke to this position because it was not vacant at the time she provided Beaumont with the requisite medical documentation.  The Court should reverse this portion of its Opinion.

6.     On July 15, 2025, defense counsel sought concurrence from the EEOC's counsel regarding the relief sought in this Motion, but concurrence was not provided.

WHEREFORE, Beaumont respectfully requests that the Court enter summary judgment in its favor with regard to the Care Coordinator position (30111350), the Quality Improvement RN position (30102853), and the other Care Coordinator position (30115849) and dismiss the Complaint in its entirety with prejudice. Alternatively, Beaumont requests that the Court reverse its decision granting summary judgment in favor the EEOC with regard to the issue of whether Shefke engaged in the interactive process in connection with the Care Coordinator position (30111350).

Respectfully Submitted,

CLARK HILL PLC

By: *s/ David M. Cessante*
     David M. Cessante (P58796)
     Stephanie V. Romeo (P83079)
DATE:  July 16, 2025          Attorneys for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION                                    Case No. 4:23-cv-11560
                                              Hon. F. Kay Behm
      Plaintiff,

v.

WILLIAM BEAUMONT HOSPITAL
d/b/a BEAUMONT HEALTH SYSTEM,

      Defendant.

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ...................................................................................... ii

CONCISE STATEMENT OF THE ISSUES PRESENTED .................................. iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .............................. iv

INTRODUCTION ............................................................................................... 1

THE COURT'S OPINION .................................................................................. 3

LEGAL ARGUMENT ....................................................................................... 9

I.      Standard for Motions for Reconsideration ..................................... 9

II.     Standards Regardign the Interactive Process ............................... 10

III.    Beaumont Was Not Required to Transfer Shefke to the Subject
        Positions Because They Were No Longer Vacant By The Time
        She Submitted Documentation Supporting Her Request for An
        Accommodation ............................................................................ 12

IV.     Alternatively, This Court Shold Reverse Summary Judgment in
        Favor of The EEOC With Regard To Whether Shefke
        Adequately Engaged in the Interactive Process in Connection
        with The Court Coordinator Position ............................................ 17

CONCLUSION ................................................................................................ 18

# INDEX OF AUTHORITIES

## <u>CASES</u>

*Brumley v. United Parcel Service, Inc.*,
909 F.3d 834, 840 (6th Cir. 2018) ............................................................................11

*E.E.O.C. v. Prevo's Family Market, Inc.*,
135 F.3d 1089, 1094–95 (6th Cir. 1998) ......................................................... 11, 12

*Fisher v. Nissan N. Am., Inc.*,
951 F.3d 409, 421 (6th Cir. 2020) ................................................... 4, 11, 12

*Hostettler v. Coll. of Wooster*,
895 F.3d 844, 857 (6th Cir. 2018) ............................................................................11

*Kaltenberger v. Ohio Coll. of Podiatric Med.*,
162 F.3d 432, 437 (6th Cir. 1998) ................................................... 12, 16

*Kennedy v. Superior Printing Co.*,
215 F.3d 650, 656 (6th Cir. 2000) ................................................. 11, 12, 14

*Kirilenko-Ison v. Board of Ed. of Danville Independent Schools*,
974 F.3d 652, 670 (6th Cir. 2020) ..........................................................2, 12

*Kleiber v. Honda of Am. Mfg.*,
485 F.3d 862, 871 (6th Cir. 2007) ............................................................................11

*Tchankpa v. Ascena Retail Grp., Inc.*,
951 F.3d 805, 812 (6th Cir. 2020) ................................................. 11, 14

## <u>RULES</u>

Local Rule 7.1(h)(2).....................................................................................9

## CONCISE STATEMENT OF THE ISSUES PRESENTED

I.   WHETHER DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD HAVE BEEN GRANTED WITH REGARD TO THE CARE COORDINATOR (30111350), QUALITY IMPROVEMENT RN (30102853), AND OTHER CARE COORDINATOR (30115849) POSITIONS WHERE ALL OF THESE POSITIONS WERE FILLED PRIOR TO THE TIME MEGAN SHEFKE PROVIDED DEFENDANT WITH MEDICAL DOCUMENTATION RELATING TO HER REQUEST TO TRANSFER AS AN ACCOMMODATION?

Defendant answers: Yes

II.  ALTERNATIVELY, WHETHER THE COURT SHOULD REVERSE ITS DECISION GRANTING SUMMARY JUDGMENT IN FAVOR OF THE EEOC WITH REGARD TO THE ISSUE OF WHETHER MEGAN SHEFKE ENGAGED IN THE INTERACTIVE PROCESS IN CONNECTION WITH THE CARE COORDINATOR POSITION (30111350) AS THE COURT'S RULING WILL PREVENT DEFENDANT FROM RAISING A LEGITIMATE DEFENSE AT TRIAL?

Defendant answers: Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432 (6th Cir. 1998)

*Kennedy v. Superior Printing Co.*, 215 F.3d 650 (6th Cir. 2000)

*Kirilenko-Ison v. Board of Ed. of Danville Independent Schools*, 974 F.3d 652 (6th Cir. 2020)

*Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805 (6th Cir. 2020)

## INTRODUCTION

The Equal Employment Opportunity Commission's ("EEOC") sole claim in this lawsuit is that Defendant William Beaumont Hospital Beaumont ("Beaumont") violated the Americans With Disabilities Act ("ADA") by failing to transfer Megan Shefke, a former Unit Shift Lead (*i.e.*, Charge Nurse) at Beaumont's Wayne hospital, to a vacant position for which she was qualified.

On October 1, 2024, Beaumont and the EEOC filed competing Motions for Summary Judgment. On July 2, 2025, the Court issued an Opinion and Order On Motions for Summary Judgment ("Opinion") wherein the Court granted in part and denied in part both parties' motions for summary judgment. As part of its ruling, the Court refused to adopt, wholesale, the legal framework espoused by either party. Instead, the Court adopted portions of the parties' arguments and promulgated its own tests, which placed a significant amount of focus on the interactive process and the parties' respective responsibilities within that process. Applying these tests to the five positions at issue, the Court concluded there were genuine issues of material fact relating to the Care Coordinator position (30111350), the Quality Improvement RN position (30102853), and the other Care Coordinator position (30115849).

However, all of these positions had been filled *prior to* the time Shefke provided Beaumont with medical documentation supporting her request to be transferred as an accommodation. In other words, none of the positions were vacant

by the time Beaumont received the medical documentation it requested and was entitled to. This is critical because, under well settled law, Beaumont's obligation under the ADA to consider Shefke's request to transfer was not triggered until Shefke provided Beaumont with the medical documentation it requested as part of the interactive process. *See e.g.*, *Kirilenko-Ison v. Board of Ed. of Danville Independent Schools*, 974 F.3d 652, 670 (6th Cir. 2020)(as the Sixth Circuit has "consistently held," "an employer is 'not obligated to provide accommodation until [the] plaintiff had provided a proper diagnosis of [her disability] and requested specific accommodation.'") The Court made a mistake and erred as a matter of law when it concluded that Beaumont had a legal duty to consider transferring Shefke to the subject positions before she provided Beaumont with the medical documentation it requested.

Alternatively, the Court made a mistake in determining that the only remaining fact in dispute with regard to the Care Coordinator position (30111350) is whether the position was vacant at the time Shefke informed Beaumont that she had applied for it and was seeking it as an accommodation. Even if the Court does not believe Beaumont is entitled to summary judgment with regard to this position, Beaumont should be permitted to argue at trial that it was not required to transfer Shefke to this position because it was not vacant at the time she provided Beaumont with the requisite medical documentation. To hold otherwise would be to deprive

Beaumont of a legitimate defense at trial. The Court should reverse summary judgment in favor of the EEOC with regard to this issue.

For these reasons, Beaumont requests that this Court enter summary judgment in its favor with regard to the Care Coordinator position (30111350), the Quality Improvement RN position (30102853), and the other Care Coordinator position (30115849) and dismiss the Complaint in its entirety with prejudice. Alternatively, Beaumont requests that this Court reverse its decision granting summary judgment in favor the EEOC with regard to the issue of whether Shefke engaged in the interactive process in connection with the Care Coordinator position (30111350).

## THIS COURT'S OPINION AND PERTINENT FACTS

### The legal test set forth by the Court

In its Opinion, the Court determined there were five internal positions at issue. (ECF No. 24, p. 18) Namely, the Care Coordinator position (30111350), the Quality Improvement RN position (30102853), the other Care Coordinator position (30115849), the Clinical Nurse POHA/PACU position (30100586), and the Clinical Nurse position (30118217). (*Id.*)

To determine whether summary judgment was appropriate with regard to each of these positions, the Court set forth the following test:

> Thus for those positions that Shefke is able to prove were ***vacant***, that she was qualified for, applied to, and is not responsible for a breakdown of the interactive process, the only remaining genuine issue of material fact that could

3

arise is if Beaumont shows the applicant who was hired had a pre-existing, vested interest in the role – something which as a matter of course, external applicants who did not already work for Beaumont will not be able to show, but internal applicants may be able to prove. (ECF No. 24, p. 64 (emphasis added)).

With regard to the test for determining which party was responsible for the breakdown in the interactive process, the Court did not adopt, wholesale, the legal framework or arguments espoused by the parties. Instead, the Court adopted portions of both parties' arguments and stated as follows:

Taken together, the court reads *Burns* and *Fisher* to set forward a rule describing, as a matter of law, what burdens an employer has in the interactive process based on what exactly is communicated by the employee. If an employee generically requests *only* to be reassigned to a **vacant position**, then an employer can legitimately, in good faith and as part of the interactive process, ask the employee to first put forward **vacant positions** that they wish to be considered for by using an internal job listing service to identify jobs which they believe they are qualified for. But if an employee specifically requests help *identifying* **vacant positions**, then an employer must in good faith do at least some investigation into whether possible vacancies exist and propose those to the employee as part of the interactive process, even if they otherwise require applicants to go out and apply. To refuse to follow up on that request may constitute a breakdown of the interactive process for which the employer bears responsibility, and an independent path to liability for a plaintiff that does not necessarily depend on what happened in regard to their request to transfer more generally. (ECF No. 24, pp. 42-43 (italicized emphasis in original, bolded emphasis added)).

In both of the tests set forth by the Court, the EEOC is required to prove that

the subject positions were vacant.

**The Court's finding that Beaumont was not responsible for the breakdown of the interactive process after Shefke submitted medical documentation supporting her transfer request and was instructed to inform Fildew if she applied for any positions**

As this Court recognized, Fildew requested that Shefke provide medical documentation supporting her request to transfer.[1]  (ECF No. 24, p. 12)  This request was made in an April 23, 2019 email that Fildew sent to Shefke stating:

> This confirms that you are requesting a further reduction of hours as an accommodation due to your disability.  This is a new request, as Stacy and I explained, the business is not able to accommodate this further reduction in your current position due to required staffing levels. I understand that you are seeking a transfer to a vacant position that would require fewer hours and fewer physical demands.  **Please have your health care provider complete the attached Medical Inquiry form to assist us with that process**.  I have confirmed with our legal department that our transfer policy and processes, which includes interviewing for transfer opportunities, are well-established and neutral and are permissible under the ADA.  I will work with you to expedite that process. (ECF No. 17-9, PageID.138 (emphasis added)).[2]

Later that same day, Fildew sent another email to Shefke reiterating the need

---

[1] This was no different than the first time Shefke requested an accommodation – she was asked to submit medical documentation supporting her request. (ECF No. 17-4, PageID.118-120)

[2] This email was prompted, in part, by Shefke's April 14, 2019 email advising that she applied for the Care Coordinator position (30111350) and was seeking the position as an accommodation and specifically asking, "[p]lease let me know what I need to do moving forward." (ECF No. 17-9, PageID.140)  This was Shefke's first communication that she was seeking to transfer as an accommodation.

for Shefke to provide medical documentation in connection with her request for an accommodation:

> The request to have a reduction in your hours from 32 down to part-time as a result of needing an accommodation for your disability **is a new request that we need documentation for**. The Medical Inquiry Form attached, is for you to take to your physician for completion so we may assist you with this process. (ECF No. 17-9, PageID.137 (emphasis added)).

As the Court noted, Shefke "submitted the paperwork from her doctor that Fildew had requested on June 3, 2019."[3] (ECF No. 24, p. 13) As the Court also noted, this led to a "renewed conversation between Shefke and Fildew." (ECF No. 24, p. 98) As part of this renewed conversation, Fildew sent an email to Shefke on June 12, 2019 stating, in part, "If you apply for anything further or need assistance, please let me know and I would be happy to assist with this process." (ECF No. 17-11, PageID.147)

As the Court properly found, "after June 12, Shefke was on notice of a legitimate, nondiscriminatory requirement that she needed to let Fildew know if Shefke 'applied for anything further' in order to give Fildew a head's up." (ECF No.

---

[3] The paperwork Shefke submitted on June 3, 2019 (which was dated May 20, 2019) stated that she required occasional four-hour shifts for rest or appointments, and that she should not be scheduled more than three 8-hour shifts per week. (ECF No. 17-10, PageID.143-145) This was different from the accommodation paperwork Shefke submitted in March 2018 stating that she needed to have "occasional 4-8 hour shifts for needed appointments or rest." (ECF No. 17-4, PageID.118-120)

24, p. 99) As the Court also properly found, by failing to inform Beaumont that she applied for any positions after June 12, 2019, Shefke was responsible for the breakdown of the interactive process. (ECF No. 24, pp. 99-101) Thus, the Court ultimately determined that Beaumont was entitled to summary judgment with regard to the Clinical Nurse position (requisition 30118217).

**The Care Coordinator position (30111350) was filled by the time Shefke submitted the requisite medical documentation**

With regard to the Care Coordinator position (30111350), the Court held that Shefke was not responsible for the breakdown in the interactive process because "Shefke clearly articulated a request to transfer to a specific role for which she was qualified, but Beaumont undisputedly did not consider her for the position." (ECF No. 24, pp. 68-69) The Court went on to hold that "the only factual dispute between the parties as to Shefke's CCA application is whether the position was, in fact, 'vacant,' or whether the vacancy had closed – and therefore Shefke's interest in it is irrelevant to establishing Beaumont's liability." (ECF No. 24, p. 68 (emphasis in original))

In reaching these conclusions, the Court focused solely on whether the position was filled at the time Shefke informed Fildew that she had applied for the position, which was on April 14, 2019. The Court did not consider whether the position was vacant at the time Shefke provided Beaumont with medical documentation supporting her request to be transferred, which was not until June 3,

2019. (ECF No. 24, p. 13)  In fact, it was not.  It is undisputed that the candidate selected for this position started working in the position on May 19, 2019, which was more than two weeks *before* Shefke submitted medical documentation supporting her transfer request. (ECF No. 18-18, PageID.468)  The position was not vacant at the time Beaumont received the requisite medical documentation.

**The Quality Improvement RN position (30102853) was filled by the time Shefke submitted the requisite medical documentation**

With regard to the Quality Improvement RN position (30102853), the Court found there was a question of fact as to which party was responsible for the breakdown of the interactive process.  (ECF No. 24, p. 76)  Specifically, the Court found there was a question of fact as to "whether Beaumont bears responsibility for a breakdown in the interactive process by failing to follow up on Shefke's application, or whether the blame lies with Shefke for failing to tell Beaumont about her application (and therefore Beaumont is not liable for failing to do more than interview her because the hiring manager was not aware she was applying as an accommodation) …." (*Id.*)

However, the Court focused solely on whether the position was filled at the time Shefke applied for it on April 16, 2019.  The Court did not consider whether the position was vacant on June 3, 2019, which is the date Shefke provided Beaumont with medical documentation supporting her request to be transferred.  It was not.  It is undisputed that the candidate selected for this position started working

8

in the position on May 16, 2019, which was more than two weeks *before* Shefke submitted medical documentation supporting her transfer request. (ECF No. 17-15, PageID.164) The position was not vacant at the time Beaumont received the requisite medical documentation.

**The other Care Coordinator position (30115849) was filled by the time Shefke submitted the requisite medical documentation**

As for the other Care Coordinator position (30115894), the Court's analysis was similar to the analysis it employed for the Quality Improvement RN position (30102853); namely, which party was responsible for the breakdown of the interactive process.  (ECF No. 24, pp. 90-91) In this regard, the Court focused solely on whether the position was filled at the time Shefke applied for it on April 16, 2019. The Court did not consider whether the position was vacant on June 3, 2019.  Again, it was not.  Although the external candidate who filled this position did not start in it until June 10, 2019, it is undisputed that the position was filled on May 21, 2019 -- almost two weeks *before* Shefke submitted medical documentation supporting her transfer request. (ECF No. 18-18, PageID.468; Ex. 1) The position was not vacant at the time Beaumont received the requisite medical documentation.

## LEGAL ARGUMENT

## I.     STANDARD FOR MOTIONS FOR RECONSIDERATION

Under Local Rule 7.1(h)(2), a motion for reconsideration may be brought on three grounds: "(A) The court made a mistake, correcting the mistake changes the

outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision; (B) An intervening change in controlling law warrants a different outcome; or (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision."

This Motion is appropriate under 7.1(h)(2)(A) because the Court made a mistake by concluding that: (i) Beaumont had a duty to transfer Shefke to the subject positions before she provided Beaumont with medical documentation supporting her request to transfer; (ii) these positions were vacant at the time Shefke provided Beaumont with the requested medical documentation; and (iii) the EEOC was entitled to summary judgment with regard to the issue of whether Shefke adequately engaged in the interactive process in connection with the Care Coordinator position (30111350).  Correcting these mistakes will change the outcome of the Court's prior decision because it will result in summary judgment being granted in Beaumont's favor with regard to all of the subject positions or, alternatively, it will preserve one of Beaumont's legal defenses at trial. Further, the mistakes were based on the record and law before the Court at the time of its prior decision.

## II.    STANDARDS REGARDING THE INTERACTIVE PROCESS

As this Court properly stated, "[o]nce an employee requests an accommodation, the employer has a duty to engage in an interactive process." (ECF

No. 24, p. 35, quoting *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018)). "From that point, 'both parties have a duty to participate in good faith.'" (*Id.*, quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007) and *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 421 (6th Cir. 2020)). "The purpose of the interactive process is to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" (*Id.*, quoting *Kleiber*, 485 F.3d at 871).

For this reason, "[t]he ADA does not obligate employers to make on-the-spot accommodations of the employee's choosing." *Brumley v. United Parcel Service, Inc.*, 909 F.3d 834, 840 (6th Cir. 2018). Stated differently, "[a]n 'employer need not take the employee's word for it that the employee has an illness that may require special accommodation.'" *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000), quoting *E.E.O.C. v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094–95 (6th Cir. 1998). "'Instead, the employer has the ability to confirm or disprove the employee's statement.'" *Id.* "'If this were not the case, every employee could claim a disability warranting special accommodation yet deny the employer the opportunity to confirm whether a need for the accommodation exists.'" *Id.*

Consistent with these standards, "employers may require documentation supporting an employee's requested accommodation." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020), citing *Kennedy*, 215 F.3d at 656, citing

29 C.F.R. pt. 1630, App. § 160.14(c). And as the Sixth Circuit has "consistently held," "an employer is 'not obligated to provide accommodation until [the] plaintiff had provided a proper diagnosis of [her disability] and requested specific accommodation.'"[4] *Kirilenko-Ison v. Board of Ed. of Danville Independent Schools*, 974 F.3d 652, 670 (6th Cir. 2020), quoting *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) and citing *Kennedy*, 215 F.3d at 656 and *Prevo's Family Market*, 135 F.3d at 1095-1095.

## III. BEAUMONT WAS NOT REQUIRED TO TRANSFER SHEFKE TO THE SUBJECT POSITIONS BECAUSE THEY WERE NO LONGER VACANT BY THE TIME SHE SUBMITTED DOCUMENTATION SUPPORTING HER REQUEST FOR AN ACCOMMODATION

As demonstrated by the above cases, Beaumont had no duty to accommodate Shefke's request to transfer until she provided the requested medical documentation. Indeed, without this documentation, Beaumont did not know if Shefke actually needed the accommodation she was requesting. Nor did Beaumont have any way of knowing which positions Shefke was physically capable of performing. This is confirmed by Fildew's April 23, 2019 emails to Shefke informing Shefke that she needed to submit medical documentation in support of her request to transfer to a position with "fewer hours and fewer physical demands." (ECF No. 17-9,

---

[4] Notably, in *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409 (6th Cir. 2020), which this Court relied upon heavily in its Opinion, the employer did not ask the plaintiff for any medical documentation after he requested an accommodation. The employer simply failed to assist the plaintiff with his request.

PageID.137-138) As Fildew explained, this documentation was needed because Shefke's request to transfer was "a new request." (*Id.*) Therefore, Fildew needed the documentation "to assist us with that process," *i.e.*, the process of assisting Shefke find a new position.[5] (*Id.*)

Despite this clear messaging, Shefke did not provide Fildew with the requested medical documentation until almost six weeks later on June 3, 2019. By this time, the Care Coordinator position (30111350), the Quality Improvement RN position (30102853), and the other Care Coordinator position (30115849) had all been filled - - *weeks earlier*. Stated differently, none of these positions were vacant by the time Shefke submitted her medical documentation.

As such, the Court made a mistake and legal error when holding there were genuine issues of material fact as to whether Beaumont violated the ADA by failing

---

[5] To this end, the Court understates the importance of Fildew's request for medical documentation in footnote 35 of its Opinion. While it is true that Shefke did not "need a medical form in hand to apply to open positions," she was required to provide Beaumont with a medical form to the extent she wanted to be transferred *as an accommodation*. The ability to apply for a position and a request to be transferred as an accommodation are two entirely different things. The former did not require Beaumont to consider Shefke's application as a request for accommodation, so Beaumont would have no need for a medical form. Nor would there be anything preventing Shefke from applying for alternative positions without a medical form. However, once Shefke requested to be transferred as an accommodation and afforded the preference that accompanies employees transferring as an accommodation, Beaumont was entitled to and requested medical documentation supporting the request. This was not a mere formality. It was a critical and necessary part of the interactive process.

13

to transfer Shefke to these positions. The reason for the Court's error is that it analyzed whether the subject positions were vacant at the time Shefke applied for the positions, when it should have analyzed whether the positions were vacant *at the time Shefke submitted medical documentation supporting her request to transfer*. Reason being, Beaumont had the right to "assess its employee's medical condition before greenlighting a proposed [transfer request]." *Tchankpa*, 951 F.3d at 812, citing *Kennedy*, 215 F.3d at 656. Put another way, Beaumont's duty to transfer Shefke as an accommodation was not triggered until she provided the requested medical documentation as that was the first time Beaumont was able to confirm Shefke actually required the accommodation she was seeking and was in a position to determine what positions she was able to perform within the scope of her restrictions.[6] Before that time, Beaumont had no way of knowing whether Shefke

---

[6] For this reason, there is a gap in the test adopted by the Court on pages 42-43 of its Opinion. That test focuses solely on the employer's duty once an employee requests to be transferred as an accommodation. The test does not account for the employee's duty to provide medical documentation once requested to do so by the employer. To be more accurate, the Court's test should be as follows: "If an employee generically requests *only* to be reassigned to a vacant position, then an employer can legitimately, in good faith and as part of the interactive process, ask the employee to first put forward vacant positions that they wish to be considered for by using an internal job listing service to identify jobs which they believe they are qualified for [and to support their request by providing their employer with the appropriate medical documentation showing they require a transfer due to a disability and are able to perform the essential functions of the positions they have identified]. But if an employee specifically requests help identifying vacant positions, then an employer [may request that the employee provide medical documentation supporting the transfer request and upon receipt of such documentation,] must in

was physically capable of performing the essential functions of the Care Coordinator position (30111350), the Quality Improvement RN position (30102853), the other Care Coordinator position (30115849), or any other position for that matter.  All Beaumont could do prior to the receipt of Shefke's medical documentation is exactly what Claxton did - - identify positions that Shefke was minimally qualified to perform based on her experience and credentials and was presumably interested in based on her application to the Care Coordinator position.

By finding there was a question of fact as to whether Beaumont had a duty to transfer Shefke to the subject positions before it had her medical documentation, the Court mistakenly assumed Beaumont had everything it needed and was entitled to in order to effectuate the transfer request. In fact, Beaumont did not.  Beaumont was waiting for Shefke to submit the requested medical documentation, so it could adequately assess her request.  In this sense, the interactive process was effectively on hold while Beaumont was awaiting Shefke's medical documentation. This explains why, as this Court found, Fildew and Shefke had a "renewed conversation" after Shefke submitted her medical documentation - - Beaumont was finally in a position to "assist [Shefke] with this process."  (ECF No. 24, pp. 97)  However,

---

good faith do at least some investigation into whether possible vacancies exist and propose those to the employee as part of the interactive process, even if they otherwise require applicants to go out and apply." By omitting the bracketed language from its test, the Court ignored a critical part of the employee's role in the interactive process.

Beaumont was not in a position to assist Shefke with transferring to Coordinator position (30111350), the Quality Improvement RN position (30102853), or the other Care Coordinator position (30115849) as those positions had all been filled during the six weeks that Shefke delayed in submitting her medical documentation.

It was clear error by the Court to conclude that Beaumont may have had a duty to transfer Shefke to Care Coordinator position (30111350), the Quality Improvement RN position (30102853), and/or the other Care Coordinator position (30115849) when all of these positions were filled well before Shefke submitted the medical documentation Beaumont had requested in connection with her request for an accommodation.[7]  Beaumont is entitled to summary judgment with regard to each of these positions. *See Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) ("the College was not obligated to provide accommodation until plaintiff had provided a proper diagnosis of ADHD and requested specific accommodation.")

## IV.   ALTERNATIVELY, THIS COURT SHOULD REVERSE SUMMARY JUDGMENT IN FAVOR OF THE EEOC WITH REGARD TO

---

[7] On page 33 of its Opinion and Order, the Court states "[t]he question is instead whether a) Beaumont actually accommodated [Shefke's] request for reassignment by *placing* her in a position for which she was qualified (or failing to provide specific assistance in identifying and applying vacant roles) …." (emphasis in original).  To the extent this Court's ruling was based on an alleged duty for Beaumont to *place* Shefke in any of the subject roles before it had her medical documentation, that mistake would be even more egregious.  There was no way Beaumont could place Shefke in another position without first knowing that this was necessary from a medical perspective and what the nature of her restrictions were.

**WHETHER SHEFKE ADEQUATELY ENGAGED IN THE INTERACTIVE PROCESS IN CONNECTION WITH THE CARE COORDINATOR POSITION (30111350)**

Even if the Court finds that Beaumont is not entitled to summary judgment with regard to the Care Coordinator position (30111350), the Court erred in granting summary judgment for the EEOC with respect to which party was responsible for the breakdown of the interactive process in connection with this position. Specifically, the Court erred in finding that (i) Shefke was not responsible for the breakdown in the interactive process because she "clearly articulated a request to transfer to a specific role for which was qualified, but Beaumont undisputedly did not consider her for the position," and that (ii) "the only factual dispute between the parties as to Shefke's CCA application is whether the position was, in fact, 'vacant,' or whether the vacancy had closed – and therefore Shefke's interest in it is irrelevant to establishing Beaumont's liability. (ECF No. 24, pp. 68-69 (emphasis in original))

This was clear error because, as shown above, Beaumont was permitted, as part of the interactive process, to require Shefke to provide medical documentation supporting her request to be transferred, and Beaumont did not have a duty to transfer Shefke to another position until she submitted such medical documentation. By granting summary judgment in favor of the EEOC with regard to the interactive process, the Court's ruling effectively prevents Beaumont from arguing at trial that Shefke was not entitled to the Care Coordinator position (30111350) because it was

17

no longer vacant by the time she submitted her medical documentation. Stated differently, the Court's ruling prevents Beaumont from arguing at trial that the parties were still engaged in the interactive process at the time the Care Coordinator position (30111350) was filled and that Beaumont lacked the necessary medical documentation to consider transferring Shefke to the position prior to the time it was filled.  There is no legal basis upon which Beaumont should be foreclosed from making this argument at trial. The Court should reverse the portion of its Opinion and Order granting summary judgment in favor of the EEOC with regard to interactive process for the Care Coordinator position (30111350).[8]

## CONCLUSION

Beaumont requests that the Court enter summary judgment in its favor with regard to the Care Coordinator position (30111350), the Quality Improvement RN position (30102853), and the other Care Coordinator position (30115849) and dismiss the Complaint in its entirety with prejudice. Alternatively, Beaumont requests that the Court reverse its decision granting summary judgment in favor the

---

[8] Beaumont does not read the Court's Opinion as foreclosing it from making this argument at trial in connection with the Quality Improvement RN position (30102853) and/or the other Care Coordinator position (30115849) as the Court did not find that the EEOC was entitled to summary judgment with regard to the interactive process for either of those positions.  If Beaumont is mistaken, it makes the same request for relief with regard to these positions as well.

EEOC with regard to the issue of whether Shefke engaged in the interactive process in connection with the Care Coordinator position (30111350).

Respectfully Submitted,

CLARK HILL PLC

By: *s/ David M. Cessante*
    David M. Cessante (P58796)
    Stephanie V. Romeo (P83079)
Date: July 16, 2025      Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was electronically filed with the clerk of the Court and served upon counsel of record via the Court's ECF System to their respective email disclosed on the Notice of Electronic Filing on July 16, 2025.

*s/Pamela Bright*
Pamela Bright