# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EQUAL EMPLOYMENT                    )
OPPORTUNITY COMMISSION,             )
                                    )
Plaintiff,                          ) CIVIL ACTION NO.
                                    ) 4:23–cv–11560
v.                                  )
                                    ) Hon. F. Kay Behm
WILLIAM BEAUMONT HOSPITAL           )
d/b/a Beaumont Health,              )
                                    )
Defendant.                          )

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION Dale Price (P55578) Detroit Field Office Patrick V. McNamara Federal Bldg. 477 Michigan Ave., Room 865 Detroit, Michigan 48226 dale.price@eeoc.gov (313) 774-0028 *Attorneys for Plaintiff* | CLARK HILL PLC David M. Cessante (P58796) Stephanie V. Romeo (P83079) 500 Woodward Avenue, Suite 3500 Detroit, Michigan 48226 dcessante@clarkhill.com sromeo@clarkhill.com (313) 965-8300 *Attorneys for Defendant* |

## PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION

Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission") responds to Defendant's Motion for Reconsideration and states:

1.     Admitted.

2.     The legal test adopted by the Court is proper, does not omit "critical elements" and should not include a requirement that that an employee provide medical documentation prior to reassignment to a part-time vacancy to accommodate a disability.

3.     The Court did not apply a "faulty test" in its Opinion and Order denying Beaumont's motion for summary judgment with regard to the vacancies at issue.

4.     Based on the record and the law, there were no outcome-changing mistakes in the Court's denial of Beaumont's motion for summary judgment with regard to the vacancies at issue. In its motion for reconsideration, Beaumont (1) misreads binding precedent upon which the Court based its test, (2) ignores material facts that refutes its assertions, and (3) improperly advances a new argument.

5.     The Court did not make any outcome-changing mistakes in granting in part the EEOC's motion for summary judgment. In this regard, the Court's Opinion and Order is supported by the record and the law.

6.     Admitted.

For the reasons fully stated herein and in the EEOC's previous summary judgment filings, the EEOC respectfully requests that the Court deny Beaumont's Motion for Reconsideration.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Dated: August 8, 2025

s/ Dale Price
DALE PRICE (P55578)
Trial Attorney
DETROIT FIELD OFFICE
Patrick V. McNamara

477 Michigan Ave., Room 865
Detroit, MI 48226
dale.price@eeoc.gov
Tel No. (313) 774-0028

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EQUAL EMPLOYMENT                    )
OPPORTUNITY COMMISSION,             )
                                    )
Plaintiff,                          ) CIVIL ACTION NO.
                                    ) 4:23–cv–11560
v.                                  )
                                    ) Hon. F. Kay Behm
WILLIAM BEAUMONT HOSPITAL           )
d/b/a Beaumont Health,              )
                                    )
Defendant.                          )

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION<br>Dale Price (P55578)<br>Detroit Field Office<br>Patrick V. McNamara Federal Bldg.<br>477 Michigan Ave., Room 865<br>Detroit, Michigan 48226<br>dale.price@eeoc.gov<br>(313) 774-0028<br>*Attorneys for Plaintiff* | CLARK HILL PLC<br>David M. Cessante (P58796)<br>Stephanie V. Romeo (P83079)<br>500 Woodward Avenue, Suite 3500<br>Detroit, Michigan 48226<br>dcessante@clarkhill.com<br>sromeo@clarkhill.com<br>(313) 965-8300<br>*Attorneys for Defendant* |
| --- | --- |

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
## BRIEF OPPOSING DEFENDANT'S
## MOTION FOR RECONSIDERATION

## COUNTERSTATEMENT OF ISSUES PRESENTED

1. Should the Court grant Beaumont's Motion for Reconsideration despite the existence of genuine issues of material fact as to whether Beaumont needed another medical inquiry form from Shefke before it could reassign her to a vacant, part-time position to accommodate her disability?

The EEOC answers "No."


2. Was the legal test applied by the Court at summary judgment based on a faulty or mistaken reading of Sixth Circuit precedent?

The EEOC answers "No."


3. Should the Court reverse its decision granting summary judgment in favor of the EEOC regarding whether Shefke engaged in the interactive process regarding Care Coordinator vacancy number 30111350?

The EEOC answers "No."


4. Is Defendant improperly using a reconsideration motion to present a new argument?

The EEOC answers "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Burns v. Coca-Cola Enters.*, 222 F.3d 247 (6th Cir. 2000).

*State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433 (6th Cir. 2005).

*Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409 (6th Cir. 2020).

*Kirilenko-Ison v. Bd. of Ed. of Danville Indep. Schools*, 974 F.3d 652 (6th Cir. 2020).

*Sarsha v. Sears, Roebuck & Co., Inc.*, 3 F.3d 1035 (7th Cir. 1993).

*Smith ex rel. Smith v. Mt. Pleasant Pub. Schs.*, 298 F.Supp.2d 636 (E.D. Mich. 2003).

*EEOC v. Wm. Beaumont Hosp.*, No. 23-cv-11560, 2025 WL 1831056 (E.D. Mich. July 7, 2025).

*Bowles v Macomb Comm. Coll.*, No. 20-13175, 2022 WL 1469515 (E.D. Mich. May 10, 2022).

*Griggs-Swanson v Beaumont Hosp. Farmington Hills*, No. 22-12897, 2024 WL 729217 (E.D Mich. Feb. 21, 2024).

## I.    INTRODUCTION

Beaumont's motion for reconsideration should be denied. The Court did not make any mistakes of fact or err as a matter of law in concluding that Beaumont had a legal duty to reassign Shefke to one of the part-time vacancies at issue, but that there were issues of fact as to who was responsible for the breakdown of the interactive process with respect to certain vacancies. Nor did the Court err in not placing importance on when Shefke submitted a medical form in connection with her request for a job transfer. In its Opinion and Order, the Court properly applied Sixth Circuit law in setting forth an employer's obligations under the ADA when an employee requests reassignment to a vacant job to accommodate a disability.  Contrary to what Beaumont asserts, the Court's analysis was not faulty, incomplete, or a misapplication of controlling Sixth Circuit law.

Furthermore, as discussed below, facts in this case raise a genuine dispute as to whether a medical form was really required before Beaumont could transfer Shefke to one of the part time vacancies at issue. These facts may lead a jury to reject Beaumont's claim that it was not obligated to consider Shefke's request for a transfer until she submitted a medical form to support her request. Moreover, the Court did not err in granting partial summary judgment in favor of the EEOC concerning the first Care Coordinator vacancy (30111350). Such ruling was proper because the record

1

shows that Shefke fulfilled her role in the interactive process regarding that vacancy. But Beaumont undisputedly declined to consider her and did so because the hiring manager had other candidates in mind, not because Shefke did not submit a medical form to supposedly validate a job transfer to accommodate her disability, as Beaumont argues. Finally, Beaumont's assertion that its "obligation under the ADA to consider Shefke's request to transfer was not triggered until Shefke provided Beaumont with the medical documentation it requested as part of the interactive process" is a new argument that it failed to present at the time the parties filed cross motions for summary judgment. Consequently, Beaumont waived this argument and its use of a motion for reconsideration to raise a new argument is impermissible. Therefore, the Court should deny Beaumont's motion for reconsideration and decline to enter summary judgment in its favor.

## II.   RECORD FACTS ABOUT BEAUMONT'S REASSIGNMENT PROCESS AS APPLIED TO SHEFKE

### A.   The Reassignment Process was Unwritten and Informal.

Defendant's lead witness, then-human resources manager Kelley Fildew, admitted that the process for job reassignment to accommodate a disability was not set forth in the written ADA policies produced by Beaumont during the litigation. Instead, she admitted she may have used "a more informal process" for this type of accommodation. *See* ECF No. 18-6,

2

PageID.391. She also said she did not conduct any training on the ADA or Beaumont's policies, but instead answered questions as employees brought them to her or her staff. ECF No. 18-6, PageID.385. Moreover, as will be described below, the process changed between February and June of 2019.[1]

### B. Beaumont's Awareness of Shefke's Diagnosis and Limitations.

Beaumont was aware of Shefke's disability long before she applied for the vacancies at issue. Shefke disclosed her Fabry disease diagnosis to Beaumont during her post-offer physical exam. ECF No. 18, PageID.315, EEOC Fact No. 8; ECF No. 18-3, PageID.371-373. In March of 2018, she submitted her first medical form when she requested (and received) an accommodation of reduced hours because of increased pain and fatigue from her Fabry disease. ECF No. 18-8, PageID.423-425; ECF No. 18-2, PageID.348. In May of 2018, she was approved for FMLA leave after she submitted paperwork citing her Fabry disease. ECF No. 18-2, PageID.349. Finally, it is undisputed that she used FMLA leave to manage her symptoms after Beaumont denied her request for another reduction in hours as an

---

[1] In fact, Beaumont would not have a formal, written disability policy until October 19, 2019, after the events that gave rise to this litigation. *See* ECF No. 18-7, PageID.408-411. Even under the October 2019 policy, employees were not automatically expected to provide medical information. Instead, the policy states that employees "may be asked to complete a Request for Accommodation form." ECF No. 18-7, PageID.409.

accommodation in February 2019. *See* ECF No. 18, PageID.319, EEOC Fact

32 and ECF No. 20, PageID.636 (admitting fact).

### C.   The Reassignment Process Before April 23.

After her February 2019 meeting with Fildew, Shefke used FMLA leave

because she was denied a reduced work schedule to 24 hours per week. Both

her request for reduced hours and Beaumont's response to it are indicative.

Shefke emailed human resources consultant representative Cassandra Novelo

on February 13, 2019:

> Hello Cassie,
> I am not sure who I should approach regarding this request, hopefully
> you are the correct person or you can direct me to someone who is.
> Last year, I asked for and was granted a reduced work schedule under
> the ADA. My schedule is currently 32 hours per week (four 8 hour
> days.) I would like to reduce my schedule from 32 hours per week to 24
> hours per week. I am physically struggling under my current schedule.
> Thank you in advance for any assistance you can provide.

ECF No. 18-9, PageID.426-427.

Novelo responded the following day:

> Hi Megan,
>
> I would advise that the next time that you work, you have a
> conversation with Stacy to discuss the possibility of posting a Part Time
> position. My manager Kelley, is willing to sit in on the meeting if
> requested. In order to drop your status you would need to apply for and
> be awarded a Part time position.
> Cassie

ECF No. 18-9, PageID.426.

Following Novelo's recommendation, Shefke met with her supervisor,

4

Stacy Coogan, and then had a second meeting with Coogan and Fildew on February 18. The meeting – and Shefke's options – were summarized by Fildew on February 20:

> This week you asked your Manager Stacy Coogan if she could consider supporting a permanent reduction in your hours from 32-hours per week to 24-hours per week. The unit due to staffing levels and current volume increasing is not able to reduce the Charge Nurse Role from a 32-hour position to a 24-hour position as it poses a due hardship to the unit and the unit needs a Charge Nurse 32-hours a week.
>
> We discussed options that you may consider including using approved FMLA time, which may be taken as outlined in the approved certification by your physician. You may apply for a medical leave or continuous leave of absence if you need extended time off work for your health related condition. If needed, you're also eligible to apply for a personal leave of absence which may be given up to 30 days (using your own PTO until exhausted) if approved. *Outside of these leaves, you may always apply for open positions within our Wayne campus or other Beaumont Health sites that are part-time status.*
>
> These options are available to you, *if you need to submit an ADA-request for new or additional accommodations please let us know.*

ECF No. 18-10, PageID.428 (emph. added). It is significant that during these discussions of Shefke's disability-related problems, which included two recommendations to apply for part-time jobs, Beaumont did not ask Shefke to submit another medical form.[2] Beaumont admits to this but oddly claims that, at that time, it was not necessary to tell Shefke about submitting a

---

[2] At this point in time, Shefke was not asked to keep Fildew informed of her efforts to apply for vacancies. While not decisive, it is further evidence of the improvisational nature of Beaumont's process.

medical form for transfer purposes because Fildew brought up the job

transfer option, not Shefke. ECF No. 20, PageID.636, No. 31.

Beaumont's reaction to Shefke's reaching out with another

accommodation request nearly two months later is even more significant.

After continuing to struggle and using FMLA leave time, in April 2019 she

took Beaumont's advice and applied for an open part-time position:

> Hello Kelly, I just want to make you aware that I am having a great deal
> of difficulty managing in my current role. I have had to call in 1 to 2
> days per week due to the exhaustion I feel. Having a patient
> assignment in addition to the charge duties, it simply too much for me
> to manage many days. Since I asked for, and was denied an 8 hour per
> week reduction in my hours, I would like to be placed into a part-time
> position that allows me to fulfill my duties without needing multiple
> call-ins to manage. I have applied for a care management position at
> Beaumont Farmington (position #30111350). Please let me know what
> I need to do moving forward. Thank you for your attention to this
> matter.

ECF No. 18-11, PageID.432-433.

Fildew's April 15 response was brief and mentioned no requirement of

an updated medical form from Shefke:

> Hi Megan,
> I have reached out to the manager over recruitment at the Beaumont
> Service Center so they are in the loop that your interested in
> transferring.

ECF No. 18-11, PageID.432. Fildew's next response to Shefke on April 16

simply told Shefke to follow up with Kevin Claxton. At the time as well,

Fildew did not ask Shefke for another medical form to process a job transfer.

ECF No. 18-11, PageID. 432.

The direct discussions between Fildew and Claxton over the "ADA Accommodation" email are also telling. *See* ECF No. 18-12, PageID.434-436. At no point over the two days does either raise the need for any medical documentation from Shefke in order to proceed. Indeed, Fildew asked Claxton to add Shefke to the interview schedule. ECF No. 18-12, PageID.434. When Shefke spoke with Claxton, he said nothing about needing a form. He simply told her how to apply for positions in the Beaumont system. ECF No. 18-2, PageID.363-364.

### D.    The April 23 Emails.

Fildew's two emails dated April 23 are worth quoting in full, as they represent the first time Beaumont asked Shefke to complete a medical form for purposes of a job transfer to a part time vacancy Shefke. The first was at 10:13am:

> Good morning Megan,
>
> This confirms that you are requesting a further reduction of hours as an accommodation due to your disability. This is a new request, as Stacy and I explained, the business is not able to accommodate this further reduction in your current position due to required staffing levels. I understand that you are seeking a transfer to a vacant position that would require fewer hours and fewer physical demands. Please have your health care provider complete the attached Medical Inquiry form to assist us with that process. I have confirmed with our legal department that our transfer policy and processes, which includes interviewing for transfer opportunities, are well-established and neutral and are permissible under the ADA. I will work with you to

7

expedite that process. Please let me know if you need anything further.

ECF No. 18-11, PageID.431.

The second was sent at 11:40am, after Shefke expressed her

understandable confusion as to how this request for part time hours was

"new," given that she had discussed the matter with Fildew in February:

> Megan,
> The request to have a reduction in your hours from 32 down to part-time as a result of needing an accommodation for your disability is a new request that we need documentation for. The Medical Inquiry Form attached, is for you to take to your physician for completion so we may assist you with this process.
>
> If you're unable to work and meet the physical demands due to your health condition, you may apply for a Continuous Medical Leave. You do have an intermittent medical leave on file that is expiring on May 31, 2019.
>
> Attached is the FMLA form to review and take to your physician if it is determined you need a continuous medical leave of absence or to begin the renewal process for intermittent certification.
>
> Thank you,
> Kelley

ECF No. 18-11, PageID.430. It is noteworthy that Fildew's April 23 emails,

unlike what she said in February, now asked Shefke to have her physician fill

out a form to enable Beaumont to provide some unspecified assistance in the

process. ECF No. 18-11, PageID.430. In February, Shefke was not told she

needed a medical form for the transfer process. Shefke's April 19 email

summarizing her conversation with Fildew is further evidence that the

8

medical form was a new requirement, as Fildew's summary from two months

prior says nothing about a new medical form being required. ECF No. 18-11,

PageID.431.

On the contrary, as Fildew testified, Beaumont was willing to treat

Shefke's Care Coordinator application as an ADA request even without a new

form:

> Q. Okay. And you needed that to -- you're telling me you
> needed that form filled out in order to be able to
> place her under the ADA?
>
> A.  The first request that she had to reduce her -- this
> was a new request that we did not have documentation
> for that asked to go from 32 hours to a further
> reduction to 24 hours. I did not have additional new
> ADA paperwork or anything from her doctor showing why
> she needed to be reduced further after a year of being
> in the role already of that first reduction.  So that
> was a request to her to see what we could get from her
> to determine how to help support her better.
>
> Q. Okay.
>
> A. In the meantime, I was supporting her trying to help
> her find opportunities on at least two occasions....
>
> Q. Okay. So it was still -- it was still possible for her
> to seek a transfer to a vacant position during this
> time?
>
> A. Correct.
>
> Q. Okay. Even without the paperwork being filled out?
>
> A. Yes. I was supporting her the whole time during her
> request even without the paperwork.

ECF No. 18-6, PageID.385-386, Fildew Dep. at 53:8-54:7.

In any event, absent from either of Fildew's emails is any indication that Shefke's application for the first Care Coordinator position was insufficient because she had not submitted another medical form. Fildew also did not explain how the form would "assist" or "expedite" the transfer process. Nor did Fildew indicate the form was required prior to reassignment.

Also important is Beaumont's response to ECF No. 18, PageID.323, EEOC Fact 53, which states: "When Shefke attempted to talk about job openings with Fildew, Fildew always told her that she had to apply for open positions. Ex. A at 103:1-104:8." In response, Beaumont said that it "admits that *one* of the things Fildew told Shefke" was that she had to apply. ECF No. 20, PageID.643 (emph. in orig.). Nowhere in the rest of the response is a mention of the necessity to submit a form. In fact, every piece of record evidence about events that pre-date April 23, 2019, suggests that a new form was not necessary for reassignment.

### E.    June 2019: The Process Changes Again

Shefke submitted her second medical form on June 3, 2019. It was after that date that Fildew finally explained how Beaumont would expedite the transfer process: Shefke's application material had been reviewed by

10

someone in the same department as Claxton and sent to a hiring manager "for further consideration." ECF No. 18-15, PageID.443. If there was an interview, it would allow for mutual questioning over the job and the candidate. *Id.* In addition, Fildew told Shefke to let Fildew know if Shefke applied for any other position. ECF No. 18-15, PageID.444.

Thus, there is considerable evidence that Beaumont's unwritten, informal reassignment process was inconsistent, as were Beaumont's expectations of Shefke as the process kept changing over the course of nearly four months. At no time during the four months that preceded the June 3 medical form did Beaumont tell Shefke she would not be reassigned under the ADA until she submitted a medical form or otherwise indicate that the process was on hold until she submitted a form.

## III.   LAW AND ARGUMENT

### A.   Legal Standard for Reconsideration.

The text of the Eastern District of Michigan's Local Rule 7.1(h)(2) states that motions for reconsideration of non-final orders "are disfavored." E. D. Mich. LR 7.1(h)(2). Here, Beaumont claims the Court made errors that fall under Local Rule 7.1(h)(2)(A), which states:

> The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision.

> However, courts in the Eastern District have repeatedly stated that

11

certain purposes are improper:

> [M]otions for reconsideration "should not be used liberally to get a second bite at the apple." *United States v. Lamar*, No. 19-CR-20515, 2022 WL 327711, at *1 (E.D. Mich. Feb. 3, 2022) (Goldsmith, J.). Indeed, motions for reconsideration are not an opportunity to re-argue a case, present new arguments, or otherwise relitigate issues that the court previously considered. *See United States v. Moore*, No. 06-20465, 2022 WL 1251009, at *1 (E.D. Mich. Apr. 27, 2022) (Edmunds, J.) (citing *Nagle Indus., Inc. v. Ford Motor Co.*, 175 F.R.D. 251, 255 (E.D. Mich. 1997)); *Burn Hookah Bar, Inc. v. City of Southfield*, No. 2:19-CV-11413, 2022 WL 730634, at *1 (E.D. Mich. Mar. 10, 2022) (Murphy, J.).

*Bowles v Macomb Comm. Coll.*, No. 20-13175, 2022 WL 1469515, at *1 (E.D. Mich. May 10, 2022). *See also Smith ex rel. Smith v. Mt. Pleasant Pub. Schs.*, 298 F.Supp.2d 636, 637 (E.D. Mich. 2003) ("a motion for reconsideration is not properly used as a vehicle to re-hash old arguments or to advance arguments that could have been argued earlier but were not"); *Griggs-Swanson v Beaumont Hosp. Farmington Hills*, No. 22-12897, 2024 WL 729217, at *3 (E.D Mich. Feb. 21, 2024) ("A movant may not use a motion for reconsideration to raise new legal arguments that could have been raised before the prior decision was issued").

### B. The Sixth Circuit Case Law Relied Upon by the Court in its Analysis Does Not Require an Employee to Submit a Medical Form to Be Reassigned.

In formulating its legal analysis, it is undisputed that the Court relied upon *Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000) and *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409 (6th Cir. 2020), citing the former

44 times and the latter 26 times. The Court noted that the parties agreed these Sixth Circuit decisions set the relevant standard. *EEOC v. Wm. Beaumont Hosp.,* No. 23-cv-11560, 2025 WL 1831056, at \*9 (E.D. Mich. July 7, 2025). But despite the reality that *Burns* and *Fisher* are controlling, Beaumont argues that the Court erred by adopting a legal test that was incomplete in that such test failed to account for "the employee's duty to provide medical documentation." ECF No. 28, PageID.851-852.

The problem with Beaumont's argument is that the Court's legal test is consistent with *Burns* and *Fisher*. Neither of those Sixth Circuit cases stand for the proposition that an employee must submit medical documentation to be reassigned as an accommodation for a disability. *Burns* noted that the plaintiff's doctor had returned him to work with a lifting restriction of 23 pounds that precluded him from working in his old position, and also that his employer did not consider that restriction disabling for the purposes of the ADA. *Burns*, 222 F.3d at 249, 251. But nowhere does *Burns* state that an employee must submit medical certification to be considered for reassignment.  Also, as Beaumont admits, *Fisher* does not discuss medical documentation at all. ECF No. 28, PageID.870 n.4.

If the *Burns* and *Fisher* courts deemed medical documentation to be necessary to reassignment, each would have said so. Neither did. Thus, there is no merit to Beaumont's contention that the legal standard applied by the

13

Court was wrong.

### C. The Record Shows There are Genuine Issues of Material Fact as to Whether Additional Medical Documentation Was Necessary for the Vacancies at Issue

As the Court stated, the summary judgment standard considers "whether the evidence presented presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Wm. Beaumont Hosp.*, 2025 WL 1831056 at *7 (quoting *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005)). The evidence set forth in Section II above is sufficient to present to the jury to decide whether Shefke needed to submit additional medical information to obtain reassignment.

In February 2019, Fildew told Shefke the latter could apply for part-time positions but did not say that a new form was necessary. Doing what Fildew had suggested, Shefke applied for an open part-time Care Coordinator Position on April 5. She told Fildew about her application in an email titled "ADA Accommodation," which also outlined her difficulty working in her current position. Fildew responded by routing the matter to Talent Acquisition—again, without mentioning the need for a new form. Fildew also advised Shefke to contact Claxton to discuss vacancies—again, without the supposed requirement of another medical form. Claxton did not mention a form during his conversation with Shefke.

Fildew exchanged emails with Kevin Claxton, one of Beaumont's recruiters on April 15-16, 2019. None of the back-and-forth between them hinted that Shefke needed a form. Fildew even asked Claxton to add Shefke to the interview schedules for the listed positions. And, as described above, Fildew testified that Beaumont was supporting Shefke "the whole time during her [ADA] request" even without the form. ECF No. 18-6, PageID.386.

In fact, the record shows that Beaumont never told Shefke that the form was *mandatory* to the reassignment process (i.e., if she did not provide it, she would not get placed). Instead, Fildew told Shefke the form would "assist" or "expedite" reassignment in some undescribed way. Consequently, viewing the record in a light most favorable to the EEOC, a reasonable jury may reject Beaumont's claim that it had no choice but to put the reassignment process "on hold" until Shefke submitted another medical form to confirm the same disability.[3]

### D.   The Inconsistent and Informal Nature of the

---

[3] Beaumont argues that unless it had a form spelling out Shefke's limitations, it could not place her. ECF No. 28, PageID.873. In the meantime, Beaumont also knew she had to take FMLA leave because she was physically unable to complete a 32-hour schedule in the job she initially held. But it left her in that job. These facts amplify the dispute as to whether a medical form was necessary to transfer Shefke to a part time, less demanding job. A jury may find that it made no sense for Beaumont to require a medical form for a transfer and keep Shefke in her original, more demanding job, until she submitted a form.

### Reassignment "Process" Refutes Beaumont's Claim that Another Medical Form was Required.

While Shefke sought reassignment, Beaumont changed the process in mid-stream and belatedly added the supposed requirement of a medical form. Fildew admitted there was no training on Beaumont's policies. ECF No. 18, PageID.316, EEOC Fact 14.[4] And there was no explanation here for why the form was necessary for the process, given the documentation already on file. On April 23, Shefke correctly insisted that she was not making a new request for accommodation. Indeed, her request for part time work as an accommodation was based on the same need for reduced hours she sought in February, due to the same medical condition. ECF No. 18-11, PageID.430. In February, Beaumont should have told Shefke that a new medical form was mandatory for ADA reassignment (assuming there was in fact such a requirement), and that she needed to get the form filled out quickly. But it did not say so until two months later. Consequently, a finder of fact could decide that the medical form was not required given that Beaumont's process was unwritten, informal and inconsistent. *See Sarsha v. Sears, Roebuck & Co., Inc.*, 3 F.3d 1035, 1040 (7th Cir. 1993) (in Title VII case, employee

---

[4] In response to this Fact, Beaumont said employees were given policies and had access to policies online and could ask questions. *See* ECF No. 20, PageID.633. As set forth above, there was no written policy to access, and the transfer process kept changing.

16

created issue of fact whether employer had a uniform formal or informal policy, precluding summary judgment for alleged violation of it).

### E.     Beaumont Already Knew of Shefke's Diagnosis and Her Need for Reduced Hours.

Beaumont cites to *Kirilenko-Ison v. Bd. of Ed. of Danville Indep. Schools*, 974 F.3d 652, 670 (6th Cir. 2020) (cleaned up) for the proposition that "an employer is not obligated to provide accommodation until the plaintiff provided a proper diagnosis of her disability and the specific accommodation." But Beaumont's reliance on *Kirilenko-Ison* is misplaced because the facts of that case are distinguishable.[5] In *Kirilenko-Ison*, the employee failed to provide any documentation to verify her condition, then

---

[5] The other cases cited by Beaumont are distinguishable as well. *See Tchankpa v Ascena Retail Group, Inc.*, 951 F.3d 805, 813 (6th Cir. 2020) (summary judgment affirmed where paperwork submitted by employee's doctor confirmed he could work without an accommodation); *Brumley v. United Parcel Service, Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (summary judgment for the defendant affirmed where the employee submitted medical forms to support lifting restrictions, then voluntarily abandoned the interactive process by having her doctor remove the restrictions and returning to work without restrictions); *Kennedy v. Superior Printing Co.*, 215 F.3d 650,652, 656 (6th Cir. 2000) (summary judgment affirmed where employee submitted questionable doctor's note, refused the undergo a medical exam to confirm the alleged disability and need for altered work schedule, and refused to work the required schedule); *EEOC v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1096-98 (6th Cir. 1998) (summary judgment entered for employer where employee claimed to have HIV but failed to submit to a job-related independent medical examination by an infectious disease expert to determine his fitness for continued employment as a produce clerk, given the job involved use of knives).

17

ended the interactive process by resigning and applying for disability benefits. *Id.* at 669-70. Thus, the Sixth Circuit concluded the employee's actions defeated her ADA claim. *Id.* Here, Beaumont was well-informed about Shefke's Fabry disease. She disclosed her condition at hire. Later, she submitted a medical form citing her condition when she requested a reduced-hours accommodation in March 2018. ECF No. 18-8, PageID.423-425. She also sought and was granted FMLA leave to manage her symptoms in May 2018.

Moreover, there is no dispute that her condition is a progressive one that worsens over time. *Wm. Beaumont Hosp.*, 2025 WL 1831056 at *1. Beaumont also had notice that Shefke's condition had worsened, as she took more FMLA time to manage her symptoms after Beaumont denied her request to work 24 hours per week in her original job. This usage of FMLA is significant because it shows her need for reduced hours to manage her symptoms, which a part-time position would provide.

Finally, it is worth noting that Beaumont is a hospital, an employer with sophisticated knowledge of a wide range of medical conditions and their effects, with this information readily available to its human resources personnel. Beaumont hired Shefke knowing she had a disease that would worsen over time. Beaumont also knew she was a disabled employee seeking the accommodation of a part-time job, and why.

Under this set of facts, a jury could find that she already provided sufficient information and did not need to submit another medical form. Initially, Beaumont certainly acted as if it did not need another form—searching for jobs and even suggesting Shefke be scheduled for interviews. Thus, *Kirilenko-Ison* is of no help to Beaumont, as it already had Shefke's diagnosis on file and knew the medical basis for her request for part time work.

### F.    The Court Did Not Err in Granting Partial Summary Judgment for the EEOC Regarding Care Coordinator Vacancy 30111350

Beaumont argues that because Shefke did not submit a medical form supporting a job transfer before the first Care Coordinator vacancy (#30111350) was filled, the Court erred in granting partial summary judgment in favor of the EEOC regarding that vacancy. ECF No. 28, PageID.875-876. This argument is meritless. The undisputed evidence shows that Claxton did not reject Shefke's candidacy for lack of a form. Instead, he declined to consider her application because of his belief that the hiring manager already had two other candidates in mind. *Wm. Beaumont Hosp.*, 2025 WL 1831056 at *20. Since the absence of a medical form had nothing to do with Beaumont's rejection of Shefke's application for the first Care Coordinator vacancy, the Court should deny Beaumont's motion.

19

### G.    Beaumont is Improperly Presenting a New Argument

Beaumont is impermissibly using its motion for reconsideration to submit a new argument which it failed to raise in support of its motion for summary judgment. Specifically, its assertion that it had no obligation to reassign Shefke to any of the vacancies until Shefke submitted a medical form in connection with reassignment is in essence a new argument – a "second bite at the apple," which is not permitted when moving for reconsideration.  On this basis alone, the Court should reject Beaumont's argument and deny the motion for reconsideration.  *Bowles v Macomb Comm. Coll.,* No. 20-13175, 2022 WL 1469515, at *1 (E.D. Mich. May 10, 2022) (new arguments cannot be raised in a motion for reconsideration). In any event, as set forth in Section III.B. above, the case law does not support Beaumont's position that a form was needed.

## IV.   CONCLUSION

Therefore, for the reasons stated herein, the EEOC respectfully requests that the Court deny Beaumont's motion for reconsideration.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Dated: August 8, 2025             s/ Dale Price
                                   DALE PRICE (P55578)
                                   Trial Attorney

20

DETROIT FIELD OFFICE
Patrick V. McNamara
477 Michigan Ave., Room 865
Detroit, MI 48226
dale.price@eeoc.gov
Tel No. (313) 774-0028

## Certificate of Service

I hereby certify that on August 8, 2025, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all record attorneys.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Dated: August 8, 2025          s/ Dale Price
                               DALE PRICE (P55578)
                               Trial Attorney

21