UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

v.

WILLIAM BEAUMONT
HOSPITAL d/b/a BEAUMONT
HEALTH SYSTEM,

      Defendant.

_____ /

Case No. 23-cv-11560

Hon. F. Kay Behm
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION (ECF No. 28)**

## I.    PROCEDURAL HISTORY

This is an employment case brought by the Equal Employment

Opportunity Commission ("EEOC" or "the Commission") on June 28,

2023, on behalf of Megan Shefke ("Shefke"), a former Unit Shift Lead

(Charge Nurse) at William Beaumont Hospital ("Beaumont") in Wayne,

Michigan.  Shefke was employed by Beaumont from May 2017 to

January 2020, when she resigned to take a different job.  The EEOC

alleges that Beaumont violated the Americans with Disabilities Act

("ADA") by failing to reassign Shefke to a vacant position for which she

was qualified.  The parties brought competing motions for summary judgment, and both were granted in part and denied in part, narrowing the scope of the issues for trial.  ECF No. 24.

Defendant now brings a motion for reconsideration of the court's order on the parties' motions for summary judgment, and asks that the court enter judgment in its favor.  ECF No. 28 (Defendant's Motion for Reconsideration).  The court ordered a response, which was received at ECF No. 30, and finds that no oral argument is necessary to resolve the issues presented.  LR 7.1(h)(3).

For the reasons explained below, the motion for reconsideration is **DENIED**.

## II.   FACTUAL BACKGROUND

The primary dispute on this motion, as presented by Defendant, is that Shefke did not provide Beaumont with updated medical documentation until June 2019, and thus Beaumont had no duty to place her in any of the three open positions prior to that time.  Because all three positions were filled before Shefke provided updated medical documentation, Beaumont says it is entitled to judgment and reconsideration of the court's prior opinion.  The relevant facts were set

out in some detail in the court's prior opinion, and to prevent needless repetition, the court assumes familiarity with that opinion. *See* ECF No. 24; *Equal Emp. Opportunity Comm'n v. William Beaumont Hosp.*, No. 23-CV-11560, 2025 WL 1831056 (E.D. Mich. July 2, 2025). For purposes of this motion only, the court highlights a few key facts and disputes of fact.

One, there is no dispute that each of the three remaining positions that Shefke claims she should have been transferred to or considered for had been filled prior to the time Shefke provided Beaumont with new medical documentation in June 2019. However, there is also no dispute that Shefke had submitted applications to all three of those positions months before, while they were advertised as vacant by Beaumont (there is a dispute as to whether one position was in fact vacant). *See* ECF No. 24, PageID.756. The court has also already indicated that a jury could find that Shefke had said enough to Beaumont to put her employer on notice that she was seeking a transfer as an accommodation at the time she applied to those positions. *E.g.*, ECF No. 24, PageID.817-22.

3

Two, there is no dispute that Beaumont was already aware that Shefke had Fabry disease, was thus disabled under the meaning of the ADA, because she had previously provided them medical documentation and received reasonable accommodations.  ECF No. 24, PageID.742-43. For example, Beaumont had already approved one request for reduced hours.  *Id.*

Three, at least some evidence shows that Beaumont did ask Shefke for updated medical documentation several times as part of the transfer process, which perhaps suggests that Beaumont sought to impose a requirement for her to provide them documentation at some point prior to being transferred.  ECF No. 17-9, PageID.138 ("Please have your health care provider complete the attached Medical Inquiry form to assist us with that process"); *id.* at PageID.137 ("The request to have a reduction in your hours from 32 down to part-time as a result of needing an accommodation for your disability is a new request that we need documentation for.").

However, there is also evidence indicating that Shefke was never told she needed to provide Beaumont with medical documentation prior to being transferred or prior to being considered for a transfer.  ECF No.

17-18, PageID.237 (Fildew[1] Dep. at 55-56) ("Q: So she could still apply
so long as she was – from your perspective, so long as she was keeping
you informed of job openings that she was interested in, it wasn't as
important to have the form in hand yet . . . ?" "A: Correct. So you're
always eligible to apply, right, . . ."). For example, when Shefke
informed Beaumont that she had applied to an open position, Beaumont
HR made no mention of requiring medical paperwork to be completed
before Shefke could be interviewed or considered for the position. ECF
No. 18-11, PageID.432 ("I have reached out to the manager over
recruitment at the Beaumont Service Center so they are in the loop that
you['re] interested in transferring."); *see also* ECF No. 18-12,
PageID.436 ("Megan is a FT [full time] Nurse here at Wayne and
looking to go PT [part time] as soon as possible as she is no longer able
to continue fulltime. If she could be scheduled for interviews for
anything she meets the qualifications for that would be helpful."); ECF
No. 18-12, PageID.435 ("Kevin-can you please review Megan's app and
send her to the hiring manager if she meets the requirements?"); *see*

---

[1] Kelly Fildew is a former HR administrator for Beaumont.

*also generally* ECF No. 30, PageID.892 (communications from

Beaumont to Shefke).

## III.   STANDARD OF REVIEW

Under Eastern District of Michigan Local Rule 7.1(h)(2) and LCrR

12.1, a party may file a motion for reconsideration of a non-final order

only if: (A) the court made a mistake, correcting the mistake changes

the outcome of the prior decision, and the mistake was based on the

record and law before the court at the time of its prior decision, (2) an

intervening change in controlling law warrants a different outcome, or

(3) new facts warrant a different outcome and the new facts could not

have been discovered with reasonable diligence before the prior

decision.  E.D. Mich. L.R. 7.1(h)(2).  "Motions for reconsideration of non-

final orders are disfavored." *Id.*

Notably, a motion for reconsideration, much like a motion to alter

or amend a judgment, is thus not for the purpose of "proffer[ing]

a new legal theory or new evidence to support a prior argument when

the legal theory or argument could, with due diligence, have been

discovered and offered during the initial consideration of the issue."

*McConocha v. Blue Cross Blue Shield Mut. of Ohio*, 930 F. Supp. 1182,

6

1184 (N.D. Ohio 1996). Nor is it an appropriate vehicle for raising new facts or arguments. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (motions under Fed. R. Civ. P. 59(e) "are aimed at reconsideration, not initial consideration"). "A motion for reconsideration 'addresses only factual and legal matters that the court may have overlooked . . . .' It is improper on a motion for reconsideration to 'ask the court to rethink what [it] had already thought through—rightly or wrongly.'" *Carter v. Robinson*, 211 F.R.D. 549, 550 (E.D. Mich. 2003) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). "It is an exception to the norm for the Court to grant a motion for reconsideration." *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 780 (E.D. Mich. 2010).

## IV. ANALYSIS

There is no dispute that there has been no intervening change in law, nor new facts that have appeared that were not previously discoverable. *See* ECF No. 28, PageID.868. Beaumont's argument is that the court made a mistake on the facts and law; specifically, "Beaumont had no duty to accommodate Shefke's request to transfer

until she provided the requested medical documentation," and because Shefke did not provide Beaumont with updated medical documentation until June 2019, Beaumont had no duty to place her in any of the three open positions that remain at issue.  *See id.* at PageID.868, 870.

## A.   Beaumont's argument is improper in this posture.

As indicated, motions for reconsideration should not be used for "a second bite at the apple."  *United States v. Lamar*, No. 19-CR-20515, 2022 WL 327711, at *1 (E.D. Mich. Feb. 3, 2022); *see Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). It cannot be reasonably argued that Defendant's original motion for summary judgment made the argument that "Beaumont had no duty to accommodate" Shefke until she "provided the requested medical documentation."  Admittedly, Beamont's original motion and response made reference to a factual dispute about the necessity of medical documentation in the statement and counterstatement of facts.  *See* ECF No. 17, PageID.90-92; ECF No. 20, PageID.636, 638, 642.

But this alleged lack of updated medical documentation and a requirement to provide such was limited to pointing out those factual disputes, and were not brought up in Beaumont's argument at all.  *See*

8

ECF No. 17, PageID.97-101; ECF No. 20, PageID.648-52.  Beaumont's argument rested on several other grounds, but did not bring forward the alleged requirement for medical documentation or the necessity of such.  If this alleged requirement truly foreclosed all the issues in this case, as Beaumont now asserts, one would expect that the point could have, and should have, been made front-and-center during the initial consideration of the issue.

The motion would (and should) therefore be denied on this basis alone, but the court nonetheless addresses the merits, as the issues will undoubtedly be relevant to the remaining issues at trial.

## B.    Relevant framework and factual issues

Beaumont argues that, "[u]nder well settled law, Beaumont's obligation under the ADA to consider Shefke's request to transfer was not triggered until Shefke provided Beaumont with the medical documentation it requested as part of the interactive process."  ECF No. 28, PageID.860 (citing *Kirilenko-Ison v. Board of Ed. of Danville Independent Schools*, 974 F.3d 652, 670 (6th Cir. 2020)).  Beaumont's reliance on *Kirilenko-Ison* and related cases for this proposition is misplaced.

It is true that, generally speaking, employers have "the right to ask for documentation from a health care provider articulating the medical necessity of [an employee's] accommodation." *Kellar v. Yunion, Inc.*, No. 25-1136, 2025 LX 464565, at *31 (6th Cir. Oct. 31, 2025) (citing *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 813 (6th Cir. 2020) (explaining that an employee "must" provide proof that an accommodation is medically necessary "when asked by his employer"); *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000) ("An employer need not take the employee's word for it that the employee has an illness that may require special accommodation.  Instead, the employer has the ability to confirm or disprove the employee's statement.").  But as far as Beaumont argues that within the facts of this case, Shefke was required by law to forward with updated medical documentation in order to trigger any of Beaumont's obligations to work to transfer her as an accommodation, and that it did not need to take any action to consider her request to transfer until it received that documentation, that goes too far.  The case law indicates that the employer, as part of the interactive process, may request documentation from the employee to verify that they have a disability, but says nothing

10

about when that documentation is due as a matter of law.  *See King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 564 (6th Cir. 2022) ("Medical documentation is not required" in starting the interactive process of a request for accommodation).  Nor does the case law state that an employer may take no action on a plaintiff's request or pause the interactive process entirely when it is already on notice of an employee's disability.  On the contrary, in *Kirilenko-Ison*, the employee failed to provide any documentation at all to verify her condition; that case thus stands for the proposition that an employer's requirement of providing paperwork is permissible when it is necessary to establish that an employee's disability is medically supported in the first place. *See Kirilenko-Ison*, 974 F.3d at 669 ("Kirilenko-Ison concedes that she did not provide the School Board with any documentation about her disability diagnosis during the interactive process").  But here, Beaumont was already aware Shefke had a medically diagnosed disability, and Shefke had already provided them medical paperwork to that effect both when receiving a prior reasonable accommodation and when taking FMLA leave.  Fabry disease is a degenerative disorder; its symptoms worsen over time.  A jury could find that imposing a

11

requirement to provide Beaumont with updated medical documentation before they took *any action* on her request to be transferred to a position with fewer hours as bad faith where Beaumont (a hospital, no less) had sufficient relevant information about her disability in their possession already.  *See King*, 30 F.4th at 565 ("The employer must participate in 'good faith' and conduct an 'individualized inquiry' into possible accommodations.") (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1045 (6th Cir. 2014).

Thus there is no general requirement as a matter of law that a plaintiff who has already provided medical documentation provide updated medical documentation prior to triggering any obligation on the part of the employer to continue the interactive process.  If Beaumont wishes to make the factual argument that this *specific* interactive process was paused entirely while they waited for updated paperwork, to be entitled to summary judgment they still have to prove that such a policy existed at Beaumont, that Beaumont in fact applied such a policy to Shefke and relied on that rationale to pause the interactive process, that such a policy was applied in good faith to

Shefke under the circumstances, and/or that they clearly communicated that requirement during the interactive process.

In the light most favorable to Shefke, factual disputes remain on all of those issues.  In the light most favorable to her, Beaumont never told Shefke that the medical form was mandatory to the reassignment process (i.e., if she did not provide it, she would not get placed, nor would she be interviewed or considered for an open position as an accommodation).  Instead, Fildew told Shefke the form would "assist" or "expedite" reassignment in some undescribed way.  Beaumont's argument that it "was waiting for Shefke to submit the requested medical documentation, so it could adequately assess her request" for a transfer is therefore based on materially disputed facts and evidence. *See* ECF No. 28, PageID.873.  The EEOC also raises factual questions about whether a policy requiring employees to provide documentation was generally in place – thus raising the question of why it was necessary to ask Shefke specifically for a new, updated medical form. ECF No. 30, PageID.890.  As the EEOC points out, Beaumont was aware that Shefke was taking additional FMLA leave at the time due to a physical inability to complete the required number of hours, and had

her prior medical accommodation form on hand.  Whether a new "request form" was actually necessary for Beaumont to make efforts to transfer her to a part-time role as an accommodation is a question best left to the jury, who could find that Beaumont "unreasonably stalled" Shefke's request in light of the information already in their possession. *See King*, 30 F.4th at 566.  There is also evidence in the record indicating Beaumont affirmatively stated that it would consider Shefke for vacant positions despite not having updated paperwork, and that it acted as though it did not need a form (including suggesting Shefke be scheduled for interviews and searching for jobs for her), thus raising factual issues about their argument that they required her to provide the paperwork first and relied on that rationale.

Beaumont's view is that, "[w]hile it is true that Shefke did not 'need a medical form in hand to apply to open positions,' she was required to provide Beaumont with a medical form to the extent she wanted to be transferred *as an accommodation*.  The ability to apply for a position and a request to be transferred as an accommodation are two entirely different things."  ECF No. 28, PageID.871.  However, the evidence does not unequivocally support that argument.  Again, the

court previously identified testimony that reads: "Q: So [Shefke] could still apply so long as she was – from your perspective, so long as she was keeping you informed of job openings that she was interested in, it wasn't as important to have the form in hand yet . . . ?" "A: Correct. So you're always eligible to apply, right, . . ."). ECF No. 17-18, PageID.237 (Fildew Dep. at 55-56); *see also* ECF No. 18-6, PageID.385-386 (Fildew Dep. at 53:8-54:7) (additional testimony reiterating this point). The EEOC identifies multiple communications from Fildew that indicated Shefke should go ahead and apply to open positions as an accommodation, and did not mention to her a requirement that she first had to submit new paperwork. ECF No. 30, PageID.892-93. A reasonable jury can read this evidence in the light most favorable to Shefke: that Shefke was always allowed to apply to positions to move the process along, and that medical documentation was not required to trigger an "expedited" process of being considered; i.e. she could have provided medical documentation to Beaumont at some later point while the interactive process continued in the meantime. While Defendant says that the court's reading "understates" the importance of other evidence (ECF No. 28, PageID.871), what they are describing is simply

considering the evidence in the light most favorable to Shefke, as the court must at summary judgment.

## C.    Whether the positions were not "vacant" because they were filled before Shefke provided documentation

Beaumont also argues that the court erred when it ruled that a material dispute of fact remained as to a particular Care Coordinator position (which the court dubbed "CCA" for purposes of trying to keep track of similarly-named open positions). Beaumont now says "the candidate selected for this position started working in the position on May 19, 2019, which was more than two weeks *before* Shefke submitted medical documentation supporting her transfer request." ECF No. 28, PageID.866 (internal citation omitted, emphasis Defendant's). Therefore, so says Defendant, "[t]he position was not vacant at the time Beaumont received the requisite medical documentation." *Id.* Beaumont says essentially the same as to the Quality Improvement RN position ("QIRN") and other Care Coordinator position ("CCB"). ECF No. 28, PageID.867.

This argument, that these positions were not "vacant" at the time Shefke submitted her updated medical form and therefore Beaumont

had no duty to place Shefke in those positions, appears nowhere in the original arguments for summary judgment and is, again, not properly brought in a motion for reconsideration.  But in any event, this argument fundamentally rests on the factual disputes identified above, including whether Beaumont clearly communicated to Shefke that it would not consider her for any open position until the moment she provided updated documentation, whether such a policy in fact existed, and whether such a policy was properly applied to Shefke.  It also rests on the disputed factual contention that the lack of updated medical information was the reason that Beaumont did not consider her for those positions.

### D.    Initial Care Coordinator position (CCA)

Finally, Beaumont argues in the alternative that, even if the court denies the rest of its motion, the court erred when it stated that the only dispute as to liability regarding the CCA position is whether that position was vacant when Shefke applied (ECF No. 24, PageID.807), and says that it must be allowed to argue at trial that "Shefke was not entitled to the Care Coordinator position (30111350) because it was no

17

longer vacant by the time she submitted her medical documentation." ECF No. 28, PageID.875-76.

The court agrees with the EEOC that this argument misstates the record. The undisputed evidence, and Defendant's own argument, shows that Claxton[2] did not reject Shefke's candidacy for the CCA position for lack of a medical accommodation form. Instead, he declined to consider her application because of his belief that the hiring manager already had two other candidates in mind. *Wm. Beaumont Hosp.*, 2025 WL 1831056 at *20; ECF No. 17, PageID.97 ("the position was already filled"). When the interactive process was triggered but not successfully resolved, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007) (quoting *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996)). Since the evidence shows that the absence of a medical form had, as a factual matter, nothing to do with Beaumont's rejection of Shefke's application for the first Care Coordinator vacancy, it is irrelevant to their liability as to that position because (assuming the position was in fact vacant) responsibility for

---

[2] Kevin Claxton worked in Talent Acquisition for Beaumont.

cutting short the interactive process as to that vacancy indisputably lies

with Beaumont alone. *See id.*[3]

## V.    CONCLUSION

Therefore, the court **DENIES** the motion for reconsideration (ECF

No. 28).

**SO ORDERED**.

Date: November 19, 2025              s/F. Kay Behm
                                     F. Kay Behm
                                     United States District Judge

---

[3] Their argument also implicitly rests on a hypothetical – that had they seriously considered Shefke for the position (such as gotten her an interview and made an offer), and clearly told her "we can't hire you for this position until you get your paperwork in," that she still would not have provided updated medical paperwork until June 2019. This attempt to defend from liability by forecasting what Plaintiff might have done under materially different circumstances is speculative and unavailing at summary judgment. *Cf. Turnes v. Amsouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994) ("an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made").